# Exhibit A

**SUM-100**

# SUMMONS
## (CITATION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>MENTOR WORLDWIDE LLC; COLOPLAST CORP.; COLOPLAST<br>MANUFACTURING US, LLC.;<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>TERESA DRAKE, MELISSA GASSAWAY, LINDA GUNTHARP,<br>PAMELA HARDIN, PATRICIA JOHNSON, | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>12/19/2018 3:44 PM<br>By: Elizabeth Spann, Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of Santa Barbara<br>1100 Anacapa Street, Santa Barbara, CA 93121-1107 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>18CV06194 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Melissa Agnetti, Esq. Napoli Shkolnik, PLLC, 5757 W. Century Blvd., Suite 680, Los Angeles, CA 90045

| DATE:<br>*(Fecha)*  12/19/2018 | Clerk, by<br>*(Secretario)*  /s/ Elizabeth Spann | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Coloplast Manufacturing US, LLC

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
      ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
      ☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Drake, et al. v. Mentor Worldwide LLC, et al. | 18CV06194 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

MARGUERITE JUCKETT, DENISE MOORE, ARACELY PARRA, RUTH TAIT, BONNA URBAN, AND JENNIFER WEST,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Drake, et al. v. Mentor Worldwide LLC, et al. | 18CV06194 |

**INSTRUCTIONS FOR USE**

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff [✔] Defendant [ ] Cross-Complainant [ ] Cross-Defendant

ANALYTIC BIOSURGICAL SOLUTIONS; DOES 1 through 100, inclusive,

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Melissa A. Agnetti (SBN 311426)
NAPOLI SHKOLNIK PLLC
5757 W Century Blvd., Ste. 680
Los Angeles, CA 90045
Telephone: (310) 331-8224
Facsimile: (646) 843-7603
magnetti@napolilaw.com

*Attorneys for Plaintiffs*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/18/2018 3:16 PM
By: Elizabeth Spann, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA BARBARA

| | |
|---|---|
| TERESA DRAKE, MELISSA GASSAWAY, LINDA GUNTHARP, PAMELA HARDIN, PATRICIA JOHNSON, MARGUERITE JUCKETT, DENISE MOORE, ARACELY PARRA, RUTH TAIT, BONNA URBAN, JENNIFER WEST, <br><br> *Plaintiffs,* <br><br> vs. <br><br> MENTOR WORLDWIDE LLC; COLOPLAST CORP.; COLOPLAST MANUFACTURING US, LLC.; ANALYTIC BIOSURGICAL SOLUTIONS; DOES 1 through 100, inclusive, <br><br> *Defendants.* | Case No. 18CV06194 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **Strict Liability – Failure to Warn** <br> 2. **Strict Liability – Manufacturing Defect** <br> 3. **Strict Liability – Design Defect** <br> 4. **Negligence** <br> 5. **Breach of Implied Warranty** <br> 6. **Breach of Express Warranty** <br> 7. **Fraudulent Deceit – Cal. Civ. Code §§ 1709, 1710** <br> 8. **Negligent Misrepresentation** <br> 9. **Fraudulent Concealment** <br> 10. **Violation of Cal. Bus. & Prof. Code § 17200** <br> 11. **Violation of Cal. Bus. & Prof. Code § 17500** <br> 12. **Violation of Cal. Civ. Code § 1750** <br><br> **DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs, TERESA DRAKE, MELISSA GASSAWAY, LINDA GUNTHARP, PAMELA HARDIN, PATRICIA JOHNSON, MARGUERITE JUCKETT, DENISE MOORE, ARACELY PARRA, RUTH TAIT, BONNA URBAN, and JENNIFER WEST, (herein referred to as "Plaintiffs"), and each of them, hereby bring this Complaint individually for damages against Defendants, MENTOR WORLDWIDE LLC ("Mentor"), COLOPLAST CORP.; COLOPLAST MANUFACTURING US, LLC.; ANALYTIC BIOSURGICAL SOLUTIONS; and DOES 1 through

Case 3:20-cv-00065-RJC-DCK   Document 1-1   Filed 05/16/19   Page 5 of 51

100, inclusive, and each of them, and allege as follows:

## GENERAL ALLEGATIONS

1. This action involves the claims of personal injury, economic damages, punitive damages, and other claims of damage arising from the implantation of Pelvic Mesh Medical Devices that were developed, manufactured, supplied, designed, labeled, packaged, distributed, marketed, advertised, licensed and sold by Defendants.

2. Coloplast Corp., Coloplast Manufacturing, US LLC, Analytic Biosurgical Solutions are collectively referred to herein as "Coloplast."

3. At all relevant times, Defendants developed technology to diagnose and treat conditions related to the pelvic health of women. At all times relevant herein, Defendants were engaged in the business of placing synthetic mesh system medical devices into the stream of commerce by designing, manufacturing, marketing, packaging, advertising, promoting, distributing, labeling, and selling such devices, including the T-Sling Universal Polypropylene Sling, Aris Transoburator, Minitape and Restorelle all hereinafter refereed to as "Pelvic Mesh."

4. At all times herein mentioned, each of the Defendants acted as the agent, servant, partner, aider and abettor, co-conspirator and joint venture of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty.

5. There exists, and at all times herein mentioned there existed, a unity of interest in ownership between certain Defendants and other Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendant, and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promise injustice.

6. The injuries and damages to Plaintiffs were caused by the wrongful acts, omissions, and fraudulent representations of Defendants, many of which occurred within the State of California.

7. At all times herein mentioned Defendants were each authorized to do business within the State of California and did in fact supply the aforementioned products within the State of California.

8. At all times herein mentioned, the officers and directors of Defendants authorized and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct which resulted in the physical injuries described herein.

## JURISDICTION AND VENUE

9. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants hereto are individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction and that said Defendants have and do regularly conduct business in the County of Santa Barbara, State of California.

## PLAINTIFFS

10. Plaintiff Teresa Drake is a natural person residing in the State of Idaho. Plaintiff Teresa Drake was implanted with a Coloplast Aris Sling during surgery performed on or around September 30, 2011. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Aris Sling was implanted, Plaintiff Teresa Drake began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

11. Plaintiff Melissa Gassaway is a natural person residing in the State of Arkansas. Plaintiff Melissa Gassaway was implanted with a Coloplast T-Sling Universal Polypropylene Sling during surgery performed on or around April 24, 2012. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast T-Sling Universal Polypropylene Sling was implanted, Plaintiff Melissa

Gassaway began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

12. Plaintiff Linda Guntharp is a natural person residing in the State of Virginia. Plaintiff Linda Guntharp was implanted with a Coloplast Aris Transoburator during surgery performed on or around January 31, 2008. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Aris Transoburator was implanted, Plaintiff Linda Guntharp began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

13. Plaintiff Pamela Hardin is a natural person residing in the State of Arkansas. Plaintiff Pamela Hardin was implanted with a Coloplast Aris Transoburator during surgery performed on or around May 28, 2013. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Aris Transoburator was implanted, Plaintiff Pamela Hardin began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

14. Plaintiff Patricia Johnson is a natural person residing in the State of Florida. Plaintiff Patricia Johnson was implanted with a Coloplast Aris Transoburator during surgery performed on or around December 14, 2010. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Aris Transoburator was implanted, Plaintiff Patricia Johnson began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

15. Plaintiff Marguerite Juckett is a natural person residing in the State of Florida. Plaintiff Marguerite Juckett was implanted with a Coloplast Minitape during surgery performed on or around August 7, 2009. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast

Minitape was implanted, Plaintiff Marguerite Juckett began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

16. Plaintiff Denise Moore is a natural person residing in the State of Illinois. Plaintiff Denise Moore was implanted with a Coloplast Aris Transoburator during surgery performed on or around December 18, 2009. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Aris Transoburator was implanted, Plaintiff Denise Moore began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

17. Plaintiff Aracely Parra is a natural person residing in the State of New Mexico. Plaintiff Aracely Parra was implanted with a Coloplast pelvic mesh device during surgery performed on or around December 6, 2013. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast pelvic mesh device was implanted, Plaintiff Aracely Parra began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

18. Plaintiff Ruth Tait is a natural person residing in the State of Texas. Plaintiff Ruth Tait was implanted with a Coloplast Aris Transoburator during surgery performed on or around April 29, 2009. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Aris Transoburator was implanted, Plaintiff Ruth Tait began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

19. Plaintiff Bonna Urban is a natural person residing in the State of South Carolina. Plaintiff Bonna Urban was implanted with a Coloplast Aris Transoburator during surgery performed on or around June 4, 2010. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast

Aris Transoburator was implanted, Plaintiff Bonna Urban began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

20. Plaintiff Jennifer West is a natural person residing in the State of North Carolina. Plaintiff Jennifer West was implanted with a Coloplast Restorelle during surgery performed on or around July 10, 2017. The Coloplast pelvic mesh device was manufactured, marketed, advertised and promoted by Defendant Coloplast and DOES 1 through 100, and each of them. After the Coloplast Restorelle was implanted, Plaintiff Jennifer West began to experience severe complications related to the implant, including but not limited to extreme pain, discomfort, urinary problems, and dyspareunia.

## DEFENDANTS

21. Defendant, Mentor is a Delaware limited liability company which has their principal place of business in California at 201 Mentor Drive, Santa Barbara, California 93111. Mentor Corporation merged with and into Mentor Worldwide, LLC on December 4, 2009. All acts and omissions of Defendant as described herein were done by their or Mentor Corporation's agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownerships.

22. Defendant, Coloplast Corp. ("Coloplast Corp.") is corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 1601 West River Road North, Minneapolis, Minnesota 55411. Coloplast Corp. is a wholly-owned U.S. sales and marketing subsidiary of Coloplast A/S, a Denmark corporation.

23. Defendant Coloplast Manufacturing US, LLC is a limited liability corporation organized and existing under Delaware law maintaining its principal place of business as 1940 Commerce Drive, North Mankato, MN 56002. Its registered office is 560 Park Street, #6, St. Paul, Minnesota 5510. Coloplast Manufacturing US, LLC is a wholly-owned subsidiary of Coloplast Corp.

24. Defendant Analytic Biosurgical Solutions ("ABISS") is a corporation organized and existing under the laws of the Republic of France maintaining its principal place of business at 14 Rue de la Telematique, St. Etienne, Loire 42000, Republic of France. ABISS' registered Untied States Food

and Drug Administration ("FDA") Agent is Elizabeth A. Boots, residing at 6106 Shamrock Drive, Madison Lake, Minnesota 56063-9525, Vice President, Quality Assurance, of Defendant Coloplast Corporation, 1601 West River Road, Minneapolis, Minnesota.

25.    ABISS' FDA registration lists its proprietary device as "Mentor Aris TransOburator Tape and Surgical Kit." On October 12, 2005, ABISS and Mentor entered into a number of agreements pursuant to which ABISS licensed a number of ABISS' products to Mentor which were thereafter marketed by Mentor under its trademarks, including its Aris trademark. On June 2, 2006, Mentor sold its surgical, urological, clinical and consumer healthcare business segments to Coloplast for $461,145,398.00, including *inter alia*, Mentor's October 12, 2005, agreements with ABISS with Mentor's Aris trademark.

26.    At all times alleged herein, Coloplast includes and included any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

27.    At all times alleged herein, Coloplast conducted regular and sustained business in California by selling and distributing its products in California as described below. By these same activities, Coloplast has sufficient contacts within the State of California to subject it to the jurisdiction of this Court.

28. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants named herein as DOES 1 through 100 are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, Plaintiffs will amend this Complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each defendant designated as a DOE is responsible, negligently, intentionally, strictly liable or in some other actionable manner, for the events and happenings as alleged herein and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said

defendants and each of them were authorized to do and are regularly doing business in the State of California.

29. When referring collectively to all Defendants in this action, Plaintiffs will use the term "Defendants."

## FACTUAL ALLEGATIONS

30. At all relevant times, Defendants were in the business of developing, supplying, designing, manufacturing, labeling, packaging, distributing, marketing, supplying, advertising, licensing, selling and otherwise engaging in all activities that are part and parcel of the sale and distribution of Pelvic Mesh Products. Defendants' Pelvic Mesh Products were purposed to remediate pelvic organ prolapse and/or stress urinary incontinence by implantation of polypropylene mesh inside the pelvic region of a woman's body.

31. The Pelvic Mesh Products contain a monofilament polypropylene mesh intended for the treatment of pelvic organ prolapse and/or stress urinary incontinence. Despite claims that this material is inert, the scientific evidence shows that this material is biologically incompatible with human tissue and promotes an immune response in a large subset of the population receiving Defendants' Pelvic Mesh Products containing this material. This immune response promotes degradation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh.

32. Defendants marketed and sold their Pelvic Mesh Products to the medical community and to patients as safe, effective and reliable medical devices which are implanted via safe, effective and minimally invasive surgical techniques for the treatment of pelvic organ prolapse and stress urinary incontinence, and as safer and more effective when compared to other products and procedures.

33. Defendants have marketed and sold their Pelvic Mesh Products to the medical community and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, and private offices,

and often include the provision of valuable consideration and benefits to health care providers. Defendants also utilized documents, brochures, websites and telephone information lines, offering exaggerated and misleading information as to the safety and utility of their Pelvic Mesh Products.

34. Defendants actively and intentionally misled and continue to mislead the public, including the medical community, health care providers, and patients, into believing their Pelvic Mesh Products are safe and effective, leading to the prescription for, and implantation of, their Pelvic Mesh Products in the Plaintiffs and numerous other women.

35. At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, minimized, and misrepresented the risks, dangers, defects, and disadvantages of Defendants' Pelvic Mesh Products and advertised, promoted, marketed, licensed, sold and/or distributed these Pelvic Mesh Products as safe medical devices, when, in fact, Defendants knew that these Pelvic Mesh Products were not safe for their intended purposes and that the Defendants' Pelvic Mesh Products would cause, and did cause, serious medical problems, and in some patients, catastrophic and permanent injuries.

36. Contrary to Defendants' representations and marketing to the medical community and to patients, Defendants' Pelvic Mesh Products have high failure, injury, and complication rates, the products fail to perform as intended or expected, their use requires frequent and often debilitating re-operations, and they have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Plaintiffs. The defects stem from any or all of the following:

   a. The use of polypropylene material in the mesh itself and the immune reaction that results, causing adverse reactions and injuries;

   b. The design of the Pelvic Mesh Devices to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

c. Biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade resulting in injury;

d. The use and design of anchors in Pelvic Mesh Products which, when placed correctly, are likely to pass through and injure major nerve routes in the pelvic region;

e. Degradation of the mesh itself over time which causes the internal tissue to degrade resulting in injury;

f. The welding of the mesh itself during production which creates a toxic substance that contributes to the degradation of the mesh and host tissue alike; and

g. The design of trocars, as devices to insert the Pelvic Mesh Products into the vagina, are defective because the device requires tissue penetration in nerve rich environments which results frequently in the destruction of nerve endings causing pain and other injuries.

37. Defendants have consistently underreported and withheld information about their Pelvic Mesh Products' propensity to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Pelvic Mesh Products through various means and media, actively and intentionally misleading the medical community, patients, and the public at large.

38. Despite the chronic underreporting of the adverse events associated with the Defendants' Pelvic Mesh Products and the underreporting of events associated with similarly designed competitor products, enough complaints were recorded for the FDA to issue a public health notification regarding the danger of these devices.

39. On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 complaints (otherwise known as "adverse events") that had been reported over a three-year period relating to pelvic mesh products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA MAUDE database indicates that the Defendants are one of the manufacturers of the products that are the subject of the notification.

40. On July 13, 2011, the FDA issued a Safety Communication: "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse." Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of Pelvic Organ Prolapse was an area of "continuing serious concern." (emphasis added.) The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of Pelvic Organ Prolapse, were "not rare." These serious complications include, but are not limited to, neuromuscular problems, vaginal scarring/shrinkage and emotion problems. Many of the serious complications required medical and surgical treatment and hospitalization. The FDA concluded that it was not clear that transvaginal repair of Pelvic Organ Prolapse with mesh or repair of SUI with mesh kits was more effective than traditional non-mesh repair of pelvic organ prolapse. The FDA conducted a systematic review of the published scientific literature from 1996-2011 and concluded that based thereon, that transvaginal pelvic organ prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair." In the July 13, 2011 Safety Communication, the FDA concluded that a "mesh procedure may put the patient at risk for requiring additional surgery or for the development of new complications. Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible." The information contained in the FDA's Public Health Notification of October 2008 and the FDA Safety Communication of July 13, 2011, was known or knowable to defendants and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions for use or labeling.

41. Defendants failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of its Pelvic Mesh Products.

42. Defendants failed to design and establish a safe, effective procedure for removal of their Pelvic Mesh Products in the event of a failure, injury, or complication associated with the devices.

43.     Feasible and suitable alternatives for the treatment of pelvic organ prolapse and stress urinary incontinence, as compared to Defendants' Pelvic Mesh Products, have existed at all times relevant hereto.

44.     The Pelvic Mesh Products were at all times utilized and implanted in a manner foreseeable to the Defendants, as Defendants generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physicians.

45.     Defendants have provided incomplete, insufficient, and misleading training and information regarding their Pelvic Mesh Products to physicians to increase the number of physicians utilizing these Pelvic Mesh Products, and thus increasing sales of the Pelvic Mesh Products, which has also lead to the dissemination of inadequate and misleading information to patients, including the Plaintiffs.

46.     The Pelvic Mesh Products implanted into the Plaintiffs were in the same or substantially similar condition as they were when they left the possession of Defendants, and in the condition directed by and expected by the Defendants.

47.     The Plaintiffs and their physicians foreseeably used and implanted the Pelvic Mesh Products, and did not misuse or alter the Pelvic Mesh Products in an unforeseeable manner.

48.     The injuries, conditions and complications suffered by women who have been implanted with Defendants' Pelvic Mesh Products included but are not limited to, mesh erosion; mesh contraction; infection; fistula; inflammation; scare tissue; organ perforation; dyspareunia (pain during sexual intercourse); blood loss; neuropathic and other acute and chronic nerve damage and pain; pudendal nerve damage; pelvic floor damage; chronic pelvic pain; urinary and fecal incontinence; prolapse of organs; and in many cases women have been forced to undergo intensive medical treatment, including, but not limited to, operations to locate and remove the mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvic, spine, and the vaginal, and operations to remove portions of the female genitalia.

49. The medical and scientific literature studying the effects of polypropylene pelvic mesh, like Defendants' Pelvic Mesh Products, have examined each of these injuries, conditions, and complications and determined that they are in fact causally related to the mesh itself and do not often implicate errors related to the implantation of the devices.

50. Defendants misrepresented to the medical and healthcare community, Plaintiffs, and the public that the Pelvic Mesh Products had been tested and were found to be safe and effective for the purposes of treating stress urinary incontinence and/or prolapse.

51. These representations were made by Defendants with the intent of inducing the medical community, Plaintiffs, and the public, to recommend, prescribe, dispense, and purchase the Pelvic Mesh Products for use as a means of treatment for stress urinary incontinence and/or pelvic organ prolapse, all of which evinced an indifference to the health, safety and welfare of the Plaintiffs.

52. Defendants failed to undertake their duties to properly know the qualities of their products and in representations to Plaintiffs and/or to Plaintiffs' healthcare providers, concealed and intentionally omitted the following material information:

    a. That the Pelvic Mesh Products were not as safe as other products and procedures available to treat incontinence and/or prolapse;

    b. That the risk of adverse events with the Pelvic Mesh Products was higher than with other products and procedure available to treat incontinence and/or prolapse;

    c. That the risk of adverse of adverse events with Pelvic Mesh Products was not adequately tested and were known by Defendants;

    d. That the limited clinical testing revealed that Pelvic Mesh Products had a higher risk of adverse effects, in addition to, and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse

    e. That Defendants failed to follow up on adverse results from clinical studies and buried and/or misrepresented those findings;

f. That Defendants were aware of dangers in the Pelvic Mesh Products in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

g. That the Pelvic Mesh Products were dangerous and caused adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

h. That patients needed to be monitored more regularly than usual while using the Pelvic Mesh Products and that in the event the products needed to be removed that the procedures to remove them had a very high failure rate and/or needed to be performed repeatedly;

i. That the Pelvic Mesh Products were manufactured negligently;

j. That the Pelvic Mesh Products were manufactured defectively; and

k. That the Pelvic Mesh Products were designed negligently and designed defectively.

53. Defendants were under a duty to disclose to Plaintiffs and their physicians, the defective nature of the Pelvic Mesh Products, including, but not limited to, the heighted risks of erosion, failure and permanent injury.

54. Defendants had sole access to material facts concerning the defective nature of the Pelvic Mesh Products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the Pelvic Mesh Products.

55. Defendants' concealment and omissions of material fact concerning the safety of the Pelvic Mesh Products were made to cause Plaintiffs' physicians and healthcare providers to purchase, prescribe, and/or dispense the Pelvic Mesh Products; and/or to mislead Plaintiffs into reliance and cause Plaintiffs to use the Pelvic Mesh Products.

56. At the time these misrepresentations were made by Defendant, and at the time Plaintiffs used the Pelvic Mesh Products, Plaintiffs were unaware of the falsehood of these representations, and reasonably believed them to be true.

57. Defendants knew and had reason to know that the Pelvic Mesh Products could and would cause severe and grievous personal injury to the users of the Pelvic Mesh Products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

58. As a result of Defendants' research and testing or lack thereof, Defendants distributed false information, including but not limited to assuring Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that the Pelvic Mesh Products were safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and were as safe or safer than other products and/or procedures available and on the market. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed and suppressed certain results of testing and research to healthcare professionals, Plaintiffs, and the public at large.

59. Defendants had a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiffs, Plaintiffs' healthcare providers, and the FDA.

60. The information distributed to the public, the medical community, the FDA, and Plaintiffs by Defendants included, but was not limited to, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial medical containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Pelvic Mesh Products.

61. Defendants intentionally made material misrepresentations to the medical community and public, including Plaintiffs, regarding the safety of the Pelvic Mesh Products, specifically that the Pelvic Mesh Products did not have dangerous and/or serious adverse health safety concerns, and that the Pelvic Mesh Products were as safe as other means of treating vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

62. Defendants intentionally failed to inform the public, including Plaintiffs, of the high failure rate including erosion, the difficulty of removing the mesh and the risk of permanent injury.

63. Defendants chose to over-promote the safety, efficacy and benefits of the Pelvic Mesh

Products instead.

64. Defendants' intent and purpose in making these misrepresentations was to deceive the public, the medical community, and Plaintiffs; to gain the confidence of the public, the medical community, and Plaintiffs; to falsely assure them of the quality and fitness for use of the Pelvic Mesh Products; and to induce Plaintiffs, the public and the medical community to request, recommend, prescribe, dispense, purchase and continue to use the Pelvic Mesh Products.

65. Defendants made claims and representations in its documents submitted to the FDA and its reports to the public and to healthcare professionals and in advertisements that the Pelvic Mesh Products did not present serious health risks.

66. These misrepresentations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

67. These representations, and others made by Defendants, were made with the intention of deceiving Plaintiffs, Plaintiffs' healthcare professionals and other members of the healthcare community, and were made in order to induce Plaintiffs, and their respective healthcare professionals, to rely on misrepresentations, and caused Plaintiffs to purchase, rely, use, and request the Pelvic Mesh Products and their healthcare professionals to dispense, recommend, or prescribe the Pelvic Mesh Products.

68. Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Pelvic Mesh Products to the public at large, for the purpose of influencing the sales of products known to be dangerous and defective, and/or not as safe as other alternatives. Defendants utilized direct-to-consumer advertising to market, promote, and advertise the Pelvic Mesh Products.

69. At the time the representations were made, Plaintiffs and their healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the Pelvic Mesh Products. Plaintiffs did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiffs discover the false representations of Defendants, nor would Plaintiffs

Case 3:20-cv-00065-RJC-DCK   Document 1-1   Filed 05/16/19   Page 20 of 51

with reasonable diligence have discovered the true facts of Defendants' misrepresentations.

70. Had Plaintiffs known the true facts about the dangers and serious health and/or safety risks of the Pelvic Mesh Products, Plaintiff would not have purchased, used, or relied on Defendants' Pelvic Mesh Products.

71. At all times relevant to this action, Defendants knew that the Pelvic Mesh Products were not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions and dyspareunia. Removal of eroded or infected mesh brings a high rate of life-threatening complications including permanent disfigurement and hemorrhage. Removal can require multiple surgical in interventions in the operating thereafter for complete removal and results in scarring on fragile compromised pelvic tissue and muscles.

72. At all relevant times herein, Defendants continued to promote Pelvic Mesh Products as safe and effective even when no clinical trials had been done supporting long or short-term efficacy.

73. In doing so the Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Pelvic Mesh Products for treatment of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

74. At all relevant times herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Pelvic Mesh Products system including, but not limited to, extreme and chronic pain, mesh erosion, infection, dyspareunia, infection, sepsis, permanent disfigurement and the need for corrective surgeries.

75. The Pelvic Mesh Products as designed, manufactured, distributed, sold and/or supplied by Defendants were defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants knowledge of pelvic health safety.

76. At all times herein mentioned, the officers and/or directors of the Defendants Coloplast and DOES 1 through 100,, and each of them named herein, participated in, authorized and/or directed the

production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiffs.

77. The devices used in Plaintiffs' surgeries were Coloplast Corp. Pelvic Mesh Products, each of which was designed, manufactured by Defendant Coloplast Corp.

78. Upon information and belief, the pain that Plaintiffs suffered after the surgeries, and continue to suffer, was caused by negligent design and manufacture of the Pelvic Mesh Devices that were surgically implanted in them.

79. Plaintiffs' injuries were caused by the negligent design and manufacturing of the Pelvic Mesh Products, which is supported by the fact that the FDA has received thousands of reports of women who were injured or killed after being implanted with devices similar to that used in Plaintiffs' procedures.

80. At all times that the Pelvic Mesh Products were implanted in Plaintiffs, the Pelvic Mesh Products were being used for the purpose that Defendants marketed the products.

81. After, and as a result of the implantation of the Pelvic Mesh Products, Plaintiffs suffered serious bodily injuries including, but not limited to, extreme pain, erosion, infection, dyspareunia, urinary problems, the need for additional surgery and other injuries. These injuries would not have occurred but for the defective nature of the products implanted and/or Defendants' wrongful conduct.

82. As a result of having the Pelvic Mesh Products implanted, Plaintiffs have experienced significant mental and physical pain and suffering, have required additional medical treatment, and have sustained permanent injury.

83. As a result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiffs were injured in their health, strength, and activity, sustaining injury to their persons, all of which injuries have caused Plaintiffs severe mental and physical pain and suffering. Plaintiffs are informed and believe, and allege thereon, that such injuries will result in some permanent disability to their bodies. As a result of such injuries, Plaintiffs have suffered general damages in an amount within the jurisdiction of the state court.

84. As a further result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiffs were required to and employed healthcare providers and incurred medical and incidental expenses; further, Plaintiffs are informed and believe, and allege thereon, that Plaintiffs may be required to incur additional medical, hospital and incidental expenses thereto, all according to proof.

## FIRST CAUSE OF ACTION
### [Strict Liability – Failure to Warn]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – FAILURE TO WARN ALLEGE AS FOLLOWS:

85. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

86. Defendants manufactured, sold and/or distributed the Pelvic Mesh Products to Plaintiffs to be used for the treatment of stress urinary incontinence and/or pelvic organ prolapse.

87. At all times mentioned herein, the Pelvic Mesh Products were and are, dangerous and presented a substantial danger to patients who were implanted with the Pelvic Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the Pelvic Mesh Products posed to pelvic reconstruction patients because its uses was specifically promoted to improve the health of such patients. The Pelvic Mesh Products were used in a way reasonable foreseeable to Defendants by Plaintiffs. Defendants failed to provide warnings of such risks and dangers to Plaintiffs as described herein.

88. As a result of the implantation of the Pelvic Mesh Products, Plaintiffs suffered debilitating injuries including extreme pain, erosion, dyspareunia, urinary problems, recurrent incontinence, and for some Plaintiffs the need for additional surgery.

89. In doing the acts herein described, the Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

90. At all times herein mentioned, the Pelvic Mesh Products were being used as intended by Defendants and in a manner foreseeable to Defendants.

91. As a result of the defective condition of the Pelvic Mesh Products, namely the lack of sufficient warnings, Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION
### [Strict Liability – Manufacturing Defect]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT ALLEGE AS FOLLOWS:

92. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

93. At all times herein mentioned, Defendants' Pelvic Mesh Products were prescribed and used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

94. The Pelvic Mesh Products were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

95. As a proximate and legal result of the defective condition of the Pelvic Mesh Products, Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## THIRD CAUSE OF ACTION
### [Strict Products Liability – Design Defect]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY- DESIGN DEFECT ALLEGE AS FOLLOWS:

96. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

97. The Pelvic Mesh Products were designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, labeled, advertised,

promoted, marketed, supplied, licensed, distributed, wholesaled, and sold by Defendants.

98. The Pelvic Mesh Products manufactured, licensed, supplied, and/or placed into the stream of commerce by Defendants were defective and unreasonably dangerous in that

    a. The foreseeable risks exceeded the benefits associated with the Pelvic Mesh Products design or formulation;

    b. They contained inadequate post-marketing warnings or instructions; and

    c. They were more dangerous than would be expected or appreciated by an ordinary consumer.

99. The Pelvic Mesh Products that were manufactured, supplied, and/or placed into the stream of commerce by Defendants were more dangerous than an ordinary customer would expect, and more dangerous than other Pelvic Mesh Products or procedures available to treat stress urinary incontinence, pelvic organ prolapse and/or rectocele repair.

100. The design defects in Defendants' Pelvic Mesh Products existed at the time when the Pelvic Mesh Products left Defendants' control.

101. Defendants knew that the Pelvic Mesh Products were to be purchased and used without inspection for defects.

102. The Pelvic Mesh Products were and are unsafe for their intended and foreseeable uses by reason of defects in the design so that they would not safely serve its purpose, but would instead expose the users of said Products to incur serious injuries.

103. Plaintiffs used the Pelvic Mesh Products in a reasonably foreseeable manner.

104. Defendants designed the Pelvic Mesh Products defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeably manner.

105. As a direct and proximate result of the aforementioned defects in the design of the Pelvic Mesh Products, Plaintiffs sustained the injuries and damages set forth herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### [Negligence]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

106.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

107.    At all times herein mentioned, Defendants, and each of them, were and are engaged in the business of researching, manufacturing, licensing, fabricating, designing, labeling, distributing, using, supplying, selling, marketing, warranting, packaging and advertising the Pelvic Mesh Products.

108.    Defendants, and each of them, owed to Plaintiffs and the public a duty to act reasonably and to exercise ordinary care in pursuit of the activities mentioned above, and Defendants, and each of them, breached said duty of due care.

109.    At all times relevant hereto, Defendants, and each of them, owed to Plaintiffs and the public a duty to act reasonably and to exercise ordinary care with respect to the safe, legal, and proper manufacture, license, design, formulation, distribution, production, processing, assembly, testing, inspection, research, marketing, labeling, packaging, preparation for use, issuance of warnings with respect to promotion, advertising, sale, and safety monitoring of the Pelvic Mesh Products, and to adequately test and warn of the risk and dangers of the Pelvic Mesh Products, both before and after sale.

110.    Additionally, Defendants, and each of them, owed to Plaintiffs and the public a duty to provide accurate, reliable, and completely truthful information regarding the safety and any dangerous propensities of the Pelvic Mesh Products manufactured, used, distributed, and/or supplied by then and to provide accurate, reliable, and completely truthful information regarding the failure of the Pelvic Mesh Products to perform as intended or as an ordinary consumer would expect.

111.    At all times relevant hereto, Defendants, and each of them, singularly and jointly, breached the aforementioned duties in that they negligently and carelessly manufactured, fabricated, designed, licensed, produced, compounded, assembled, inspected or failed to inspect, tested or failed to test, warned or failed to warn of the health hazards, labeled, distributed, handled, used, supplied, sold, marketed, warranted, packaged, promoted and advertised the Pelvic Mesh Products in that said Pelvic

Mesh Products caused, directly and proximately, the injuries of Plaintiff through failure of the Pelvic Mesh Products to perform as intended or as an ordinary consumer would expect.

112. The acts of Defendants, and each of them, as herein alleged, constitute violations of the duty of ordinary care and skill owed by Defendants, and each of them, to Plaintiffs.

113. Plaintiffs used, handled, or were implanted with Defendants' Pelvic Mesh Products referred herein in a manner that was reasonably foreseeable.

114. As the direct and proximate result of Defendants' breach of their aforementioned duties with respect to the Pelvic Mesh Products, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### [Breach of Implied Warranty]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR BREACH OF IMPLIED WARRENTY ALLEGE AS FOLLOWS:

115. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

116. Defendants, and each of them, impliedly warranted to the Plaintiffs, their prescribing physicians and healthcare providers, the medical scientific, pharmaceutical and health communities, the FDA, and the public, in general, that the Pelvic Mesh Products were of merchantable quality and safe and fit for the use for which they were intended.

117. Plaintiffs and their physicians and healthcare providers were, and remain, unskilled in the research, design and manufacture of the Pelvic Mesh Products and reasonably relied on the skill, judgment and implied warranty of Defendants in using the aforementioned Pelvic Mesh Products.

118. Defendants breached their warranties in that the Pelvic Mesh Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, in that the Pelvic Mesh Products had dangerous propensities and known or knowable side effects when put to their intended use and would cause severe injuries to the user, which propensities and side effects were known or knowable but were not warned of by Defendants.

119. As a result of the aforementioned breach of implied warranties by Defendants and each of

them, Plaintiffs suffered injuries and damages as alleged herein.

120.    After Plaintiffs were made aware their injuries were a result of the aforesaid Pelvic Mesh Products, Defendants had ample and sufficient notice of breach of said warranty.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### [Breach of Express Warranty]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY ALLEGE AS FOLLOWS:

121.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

122.    Defendants expressly warranted to Plaintiffs and/or their authorized agents or sales representations, in publications, and other communications intended for medical patients, and the general public, that the defective Pelvic Mesh Products were safe, effective, fit and proper for their intended use.

123.    Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid products.  The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use in which it was intended and caused Plaintiffs to sustain damages and injuries herein alleged.

124.    As soon as the true nature of the products, and the fact that the warranty and representations were false, were ascertained, said Defendants had ample and sufficient notice of the breach of said warranty.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### [Fraudulent Deceit – Cal. Civ. Code §§ 1709, 1710]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR FRAUDULENT DECEIT ALLEGE AS FOLLOWS:

125.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

126.    At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and their physicians, the true facts concerning the aforesaid Pelvic Mesh Products, that is, that said products were dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. Defendants made the affirmative representations as set forth above to Plaintiffs and their physicians and the general public prior to the date Pelvic Mesh Products were implanted in Plaintiffs, while concealing material facts.

127.    At all times herein mentioned, Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore, Plaintiffs, with the intent to defraud as herein alleged.

128.    At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the Pelvic Mesh Products for the correction of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele. Defendants' representations were a substantial factor in Plaintiffs utilizing the Pelvic Mesh Products for correction of their medical conditions.

129.    As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as herein set forth.

130.    The herein-described conduct of said Defendants, and each of them, was willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of patients with pelvic medical conditions, such as Plaintiffs. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## EIGHTH CAUSE OF ACTION
### [Negligent Misrepresentation]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION ALLEGE AS FOLLOWS:

131.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this

Complaint as if fully set forth herein and further allege as follows:

132.    Defendants from the time that the Pelvic Mesh Products were first tested, studied, researched, first manufactured, marketed and distributed, and up to the present,    made false representations, as previously set forth herein, to the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, including, but not limited to, the misrepresentation that the Pelvic Mesh Products were safe, fit, and effective for the treatment of pelvic organ prolapse, stress urinary incontinence, and/or rectocele repair.

133.    At all times relevant hereto, Defendants conducted a sales and marketing campaign to promote the sale of the Pelvic Mesh Products and willfully deceive the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general as to the health risks and consequences of the use of the Pelvic Mesh Products.

134.    Defendants made the foregoing misrepresentations without any reasonable ground for believing them to be true. These misrepresentations were made directly by Defendants, by sales representatives, detail persons and other authorized agents of said Defendants, and in publications and other written materials directed to the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general with the intention of inducing reliance and the purchase and implantation of the Pelvic Mesh Products.

135.    The foregoing representations by Defendants were in fact false in that the Pelvic Products are not, and at all relevant times alleged herein, were not safe, fit, and effective for the treatment of pelvic organ prolapse, stress urinary incontinence and/or rectocele, the use of the Pelvic Mesh Products is hazardous to health, and the Pelvic Mesh Products have a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered as described herein.  The foregoing misrepresentations by Defendants were made with the intention of inducing reliance and inducing the purchase and implantation of Pelvic Mesh Products.

136.    In reliance on the misrepresentations be Defendants, Plaintiffs and their prescribing

physicians and healthcare providers were induced to purchase use the Pelvic Mesh Products. If they had known of the true facts and the facts concealed by Defendants, they would not have used the Pelvic Mesh Products, and their reliance upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

137.    As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as set forth herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### NINTH CAUSE OF ACTION
[Fraudulent Concealment]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT ALLEGE AS FOLLOWS:

138.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

139.    At all times mentioned herein, Defendants had the duty and obligations to disclose to Plaintiff and to her physicians, the true facts concerning the Pelvic Mesh Products, that is, that said products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. Defendants made the affirmative representations as set forth above to Plaintiffs and their physicians and the general public prior to the date the Pelvic Mesh Products were implanted in Plaintiffs, while concealing material facts.

140.    At all times herein mentioned, Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore Plaintiffs, with the intent to defraud as herein alleged.

141.    At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set for the above, and had they been aware of said fact, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the Pelvic Mesh Products for correction of urinary incontinence, pelvic organ prolapse, vaginal vault

prolapse and rectocele. Defendants' misrepresentations were a substantial fact in Plaintiffs utilizing the Pelvic Mesh Products for correction of their medical conditions.

142. As a result of the concealment of the facts set for the above, Plaintiffs sustained injuries as set forth herein.

143. The herein-described conduct of said Defendants, and each of them, was willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of patients with pelvic medical conditions, such as Plaintiffs. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## TENTH CAUSE OF ACTION
### [Violations of Bus. & Prof. Code § 17200]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE §17200 ALLEGE AS FOLLOWS:

144. Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

145. California Business & Professions Code § 17200 provides that unfair competition shall mean and include "any unlawful, unfair or fraudulent business act and unfair, deceptive, untrue or misleading advertising."

146. Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the Pelvic Mesh Products in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiffs, or persons responsible for consumer.

147. The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California Business & Professions Code § 17200. The acts of untrue and misleading advertising set forth in presiding paragraphs are incorporated by reference and are, by definition, violations of California Business & Professions Code § 17200. This conduct is set forth fully herein, and includes, but is not limited to:

a. Representing that goods or services have characteristics, ingredients, uses, benefits or

qualities that they do not have;

b. Advertising goods or services with the intent not to sell them as advertised;

c. Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have;

d. Failing to disclose information concerning goods which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

e. Unconscionable actions and courses of action; and

f. Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

148. Defendants uniformly communicated the purported benefits of the Pelvic Mesh Products while failing to disclose the serious and dangerous side-effects related to the Products and of the true state of the Pelvic Mesh Products, the regulatory status, its safety, its efficacy and its true usefulness. Defendants made these representations to physicians, the medical community at large and to patients and consumers, such as Plaintiffs, in their marketing and advertising.

149. Defendants' conduct in connection with the Pelvic Mesh Products was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding because Defendants misleadingly, falsely and/or deceptively misrepresented and omitted numerous material facts regarding the utility, benefits, costs, safety, efficacy and advantages of the Pelvic Mesh Products.

150. As a direct, proximate and foreseeable result of Defendants' statutory violations, Plaintiffs suffered the injuries and consequential economic and other losses, as described above, when Plaintiffs were implanted with the Pelvic Mesh Products.

151. These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200.

152. The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the

conduct described therein.

153.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and use of Defendants' Pelvic Mesh Products in California, sold in large part as a result of the acts and omissions described herein.

154.    Said Plaintiffs, pursuant to California Business & Professions Code § 17203, seek an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### ELEVENTH CAUSE OF ACTION
**[Violations of Bus. & Prof. Code § 17500]**
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE §17500 ALLEGE AS FOLLOWS:

155.    Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

156.    Plaintiffs bring this cause of action pursuant to California Business & Professions Code § 17500.

157.    California Business & Professions Code § 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

158.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code § 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Defendants' Pelvic Mesh Products:

    a.  Representing that the Pelvic Mesh Products are safe, fit, and effective for human use, knowing that said representations were false, and concealing that the Pelvic Mesh Products had a serious propensity to cause injuries to users;

    b.  Engaging in advertising programs designed to create the image, impression and belief by

consumers and physicians that the Pelvic Mesh Products are safer than other alternative products, even though the Defendants knew this to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

c. Purposely downplaying and understating the health hazards and risks associated with the Pelvic Mesh Products.

d. Issuing promotional literature deceiving potential users of the Pelvic Mesh Products by relaying positive information, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of the Pelvic Mesh Products.

e. Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide implanting physicians with appropriate information and protect patients who use their products, including Plaintiffs, such as failing to engage in proper signal detection and follow up, review· of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels and instructions concerning safety issues and safe implanting practices for their products.

159. The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code § 17500.

160. The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

161. As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of millions of dollars in ill-gotten gains from the sale and prescription of the Pelvic Mesh Products in California, sold in large part

as a result of the acts and omissions described herein.

162.  Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

163.  Said Plaintiffs seek restitution of the monies collected by Defendants, and each of them, and other injunctive relief to cease such false and misleading advertising in the future.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## TWELFTH CAUSE OF ACTION
### [Violations of Cal. Civ. Code § 1750]
PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR VIOLATIONS OF CAL. CIVIL CODE § 1750 ALLEGE AS FOLLOWS:

164.  Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

165.  Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act, California Civil Code §§ 1750 et. seq. ("CLRA").

166.  Said Plaintiffs hereby seek injunctive relief as appropriate against Defendants, and each of them, for their violations of California Civil Code §§ 1750 et. seq. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale of goods to consumers.

167.  Plaintiffs and are "consumers" within the meaning of California Civil Code § 176l(d).

168.  Defendants have violated, and continue to violate, the CLRA in representing that goods have characteristics and benefits which they do not have, in violation of California Civil Code § 1770(a)(5).

169.  At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Civil Code § 1770, by engaging in the following acts and practices with intent to induce members of the public to purchase and use Pelvic Mesh Products:

    a.  Representing that the Pelvic Mesh Products are safe, fit, and effective for human use,

knowing that said representations were false, and concealing that the Pelvic Mesh Product had a serious propensity to cause injuries to users;

b.  Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the Pelvic Mesh Products are safer than other alternative products, even though the Defendants knew this to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

c.  Purposely downplaying and understating the health hazards and risks associated with the Pelvic Mesh Products.

d.  Issuing promotional literature and commercials deceiving potential users of the Pelvic Mesh Products by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of the Pelvic Mesh Products.

e.  Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide prescribing physicians with appropriate information and protect patients who use their products, including Plaintiffs, such as failing to engage in proper signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels concerning safety issues and safe prescribing practices for their products.

170.    The foregoing practices constitute false and misleading advertising and representations within the meaning of California Civil Code § 1770. The acts of untrue and misleading statements by Defendants described herein present a continuing threat to members of the public and individual consumers in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein. Unless Defendants are enjoined from

continuing to engage in these violations of the CLRA, Plaintiffs will continue to be harmed by the wrongful actions and conduct of Defendants. Pursuant to California Civil Code § 1780, said Plaintiffs seek an order of this court for injunctive relief calling for Defendants, and each of them, to cease such deceptive business practices in the future.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For past and future general damages, according to proof;

2.    For past and future medical and incidental expenses, according to proof;

3.    For past and future loss of earnings and/or earning capacity, according to proof;

4.    For future medical monitoring costs, according to proof;

5.    For punitive and exemplary damages in an amount to be determined at trial;

6.    For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

7.    For a disgorgement of profits, according to proof.

8.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.


DATED: December 18, 2018                    NAPOLI SHKOLNIK PLLC

                                            By: _____
                                            Melissa A. Agnetti
                                            *Attorney for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs each demand an individual trial by jury on all issues which may be tried by a jury.

DATED: December 18, 2018

NAPOLI SHKOLNIK PLLC

By: _____
Melissa A. Agnetti
*Attorney for Plaintiffs*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
— Melissa A. Agnetti, Esq. (SBN 311426)
Napoli Shkolnik, PLLC
5757 W. Century Blvd., Suite 680
Los Angeles, CA 90045
TELEPHONE NO.: (310) 331-8224    FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff, Teresa Drake, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara 93121-1107
BRANCH NAME:

CASE NAME:
Drake, et al. v. Mentor Worldwide LLC, et al.

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
12/19/2018 3:44 PM
By: Elizabeth Spann, Deputy

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 18CV06194<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☑ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* · 12
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 17, 2018

Melissa A. Agnetti
_____
(TYPE OR PRINT NAME)

▶ *[signature]*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

Case 3:20-cv-00065-RJC-DCK   Document 1-1   Filed 05/16/19   Page 41 of 51

<table>
<tr><td>ATTORNEY OR PARTY WITHOUT ATTORNEY <i>(NAME AND ADDRESS)</i>:<br>Melissa A. Agnetti, Esq. (SBN 311426)<br>5757 W. Century Blvd., Suite 680<br>Los Angeles, CA 90045<br>(310) 331-8224<br>ATTORNEY FOR <i>(NAME)</i>:  Plaintiffs</td><td>TELEPHONE NO.:</td><td><i>FOR COURT USE ONLY</i></td></tr>
</table>

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS)*: <br>Melissa A. Agnetti, Esq. (SBN 311426)<br>5757 W. Century Blvd., Suite 680<br>Los Angeles, CA 90045<br>(310) 331-8224<br>ATTORNEY FOR *(NAME)*: Plaintiffs | TELEPHONE NO.: | *FOR COURT USE ONLY*<br><br>ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>12/19/2018 3:44 PM<br>By: Elizabeth Spann, Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**

| ☒ Santa Barbara–Anacapa<br>1100 Anacapa Street<br>Santa Barbara, CA 93101 | ☐ Santa Maria-Cook<br>312-C East Cook Street<br>Santa Maria, CA 93454 | ☐ Lompoc Division<br>115 Civic Center Plaza<br>Lompoc, CA 93436 |

PLAINTIFF: Teresa Drake, et al.

DEFENDANT: Mentor Worldwide LLC, et al.

| **CIVIL CASE COVER SHEET ADDENDUM** | CASE NUMBER:<br>18CV06194 |
|---|---|

Santa Barbara County Superior Court Local Rule, rule 201 divides Santa Barbara County geographically into two separate regions referred to as "South County" and "North County," the boundaries of which are more particularly defined in rule 201. "South County" includes the cities of Carpinteria, Santa Barbara, and Goleta; "North County" includes the cities of Santa Maria, Lompoc, Buellton and Solvang. A map depicting this geographical division is contained in Appendix 1 to the local rules.

Local Rule 203 provides: "When, under California law, 'North County' would be a 'proper county' for venue purposes, all filings for such matters shall be in the appropriate division of the Clerk's office in North County. All other filings shall be made in the Clerk's office in the appropriate division of the Court in South County. The title of the Court required to be placed on the first page of documents pursuant to CRC 2.111 includes the name of the appropriate Court division."

A plaintiff filing a new complaint or petition is required by Local Rule 1310 to complete and file this Civil Case Cover Sheet Addendum to state the basis for filing in North County or South County.

The undersigned represents to the Court:

This action is filed in   ☐ North County   ☒ South County   because venue is proper in this region for the following reason(s):

☒ A defendant resides or has its principal place of business in this region at:   201 Mentor Dr., Santa Barbara, <u>California 93111</u>

☐ The personal injury, damage to property, or breach of contract that is claimed in the complaint occurred in this region at: _____

☐ There is a related case filed with the court in this region (e.g., the related personal injury action to a petition to transfer structured settlement payments) [identify case, including case number]: _____

☐ Venue is otherwise proper in this region because [explain]: _____

Dated:   12/19/2018

<u>Signature of Plaintiff or Plaintiff's Counsel</u>

Form Adopted for Mandatory Use<br>Santa Barbara Superior Court<br>SC-2069 (New July 2018)

**CIVIL CASE COVER SHEET ADDENDUM**

Case 3:20-cv-00065-RJC-DCK   Document 1-1   Filed 05/16/19   Page 42 of 51

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA**

STREET ADDRESS: 1100 Anacapa Street
CITY AND ZIP CODE: Santa Barbara CA 93101
BRANCH NAME: Anacapa

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**12/19/2018**
Darrel E. Parker, Executive Officer
BY Spann, Elizabeth
Deputy Clerk

CAPTION:

**Teresa Drake et al vs Mentor Worldwide LLC et al**

**ORDER AND NOTICE OF CASE ASSIGNMENT;
NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
**18CV06194**

---

The above case is hereby assigned to Judge **Donna D Geck** for ALL purposes, including trial. All future matters, including ex-parte matters, are to be scheduled with the assigned judge. Counsel shall include the name of the assigned judge in the caption of every document filed with the court. The above-entitled case is hereby ordered set for:

**Case Management Conference on 04/19/2019 at 8:30 AM in SB Dept 4 at the court address above.**

PLAINTIFF SHALL GIVE NOTICE of this assignment to ALL parties brought into the case, including but not limited to defendants, cross-defendants and intervenors. A Proof of Service of this ORDER & NOTICE OF CASE ASSIGNMENT is to be filed with the Court within five (5) working days after service. Failure to give notice and file proof thereof or failure to appear may result in the imposition of sanctions. Pursuant to California Rule of Court 3.725, no later than fifteen (15) calendar days before the date set for the Case Management Conference, each party must file a Case Management Statement (Judicial Council form CM110). In lieu of each party filing a separate Case Management Statement, any two or more parties may file a joint statement.

At the Court's discretion counsel, parties and insurance representatives (if any) with full settlement authority may be required to attend a CADRe Information Meeting within ten (10) days of the Conference date.

Dated: 12/19/2018

Judge of the Superior Court
Michael Carrozzo

---

**CLERK'S CERTIFICATE OF MAILING**

I certify that I am not a party to this action and that a true copy of the foregoing was mailed first class, postage prepaid, in a sealed envelope addressed as shown, and that the mailing of the foregoing and execution of this certificate occurred at (*place*): Santa Barbara, California on: 12/19/18.

Melissa A Agnetti
5757 W Century Blvd Ste 680
Los Angeles CA 90045

Darrel E. Parker, Executive Officer | By | Elizabeth Spann | Deputy Clerk

SC-2028 [Rev. 7/1/02]

**ORDER & NOTICE OF CASE ASSIGNMENT
NOTICE OF CASE MANAGEMENT CONFERENCE**

Local Rule 1309
CRC 3.222

DONALD F. ZIMMER, JR. (SBN 112279)
*fzimmer@kslaw.com*
WILLIAM E. STEIMLE (SBN 203426)
*wsteimle@kslaw.com*
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

Attorneys for Defendants
COLOPLAST CORP. and
COLOPLAST MANUFACTURING US, LLC

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
**04/09/2019**
Darrel E. Parker, Executive Officer
BY ___Chavez, Terri___
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| Teresa Drake, et al., | Case No. 18CV06194 |
| Plaintiffs, | **STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT AND TO CONTINUE CASE MANAGEMENT CONFERENCE** |
| v. | |
| Mentor Worldwide LLC, et al., | |
| Defendants. | Complaint Filed:    December 18, 2018 |

Teresa Drake, et al. ("Plaintiffs"), and Defendants Coloplast Corporation and Coloplast Manufacturing US, LLC ("Coloplast"), by and through their counsel of record, hereby stipulate, as follows:

1.    On December 18, 2018, Plaintiffs filed a Complaint for Damages in the action entitled *Teresa Drake, et al. v. Mentor Worldwide LLC, et al.,* Case No. 18CV06194in the Superior Court of the State of California for the County of Santa Barbara. Coloplast was served with a copy of the Complaint on March 21, 2019. The Court scheduled a Case Management Conference for April 19, 2019.

2.    Soon after being served with the Complaint, counsel for Coloplast contacted

1

counsel for Plaintiffs to address certain concerns Coloplast had with the Complaint, including the named parties and venue, and whether agreement could be reached with Plaintiffs to resolve those concerns, to save the parties and the Court the time and expense of motion practice.

3.    Plaintiffs' counsel has indicated that they are considering the issues that Coloplast's counsel has brought to their attention and will consider filing an Amended Complaint or taking other appropriate action in response.

4.    Given the possibility that a further meet and confer between the parties may resolve the above issues, the parties wish to extend the time for Coloplast to answer or otherwise respond to the Complaint and continue the Case Management Conference currently scheduled for April 19, 2019.

5.    Because this stipulation extends the time for Coloplast to answer or otherwise respond to the Complaint beyond the fifteen (15) day extension permitted under California Rule of Court 3.110(d) without a Court Order, the parties seek an Order from the Court permitting this extension of time.

WHEREFORE, IT IS STIPULATED that the parties agree to a thirty (30) day extension of time to answer or respond to the Complaint and a sixty (60) day continuance of the Case Management Conference. Pursuant to this stipulation, Coloplast will answer or otherwise respond to the Complaint by May 20, 2019 and the Case Management Conference will be continued until June 18, 2019.

**IT IS SO STIPULATED.**

DATED: April 4, 2019                    NAPOLI SHKOLNIK PLLC

                                        By: _____
                                             MELISSA A. AGNETTI

                                        Attorneys for Plaintiffs

2

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO ANSWER OR OTHERWISE RESPOND
TO COMPLAINT AND TO CONTINUE CASE MANAGEMENT CONFERENCE

DATED: April 4, 2019

KING & SPALDING LLP

By: _____
DONALD F. ZIMMER, JR.
WILLIAM E. STEIMLE

Attorneys for Defendants
Coloplast Corp. and Coloplast Manufacturing
US, LLC

**IT IS SO ORDERED:**

DATED: **04/09/2019** , 2019

By: _____
HON. DONNA D. GECK
JUDGE OF THE SUPERIOR COURT

3

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO ANSWER OR OTHERWISE RESPOND
TO COMPLAINT AND TO CONTINUE CASE MANAGEMENT CONFERENCE

# PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in the county of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction this service was made. I am over the age of eighteen years and not a party to the within action.

On April 5, 2019, I served the following documents in the manner described below:

**STIPULATION AND [PROPOSED] ORDER TO EXTEND TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT AND TO CONTINUE CASE MANAGEMENT CONFERENCE**

☑ (BY U.S. MAIL) I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for mailing with the United States Postal Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☐ (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐ (BY FACSIMILE) I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☐ (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of King & Spalding LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☐ BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through King & Spalding LLP's electronic mail system to the email addresses set forth below.

☐ (BY PERSONAL DELIVERY) I caused such envelope to be delivered by hand to the offices of each addressee below.

On the following part(ies) in this action:

Melissa A. Agnetti
5757 W. Century Boulevard Suite 680
Los Angeles, CA 90045
*Attorneys for Plaintiffs*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 5, 2019, at San Francisco, California.

Amber Murphy

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 311426 | FOR COURT USE ONLY |
|---|---|
| NAME: Melissa Agnetti, Esq.<br>FIRM NAME: Napoli Shkolnik, PLLC<br>STREET ADDRESS: 5757 W. Century Blvd., Suite 680<br>CITY: Los Angeles STATE: CA ZIP CODE: 90045<br>TELEPHONE NO.: 310-331-8224 FAX NO : 646-843-7603<br>E-MAIL ADDRESS: magnetti@napolilaw.com<br>ATTORNEY FOR (Name): Teresa Drake et al. (Plaintiffs) | ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>4/16/2019 11:42 AM<br>By: Terri Chavez, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93121-1107
BRANCH NAME: Anacapa Division

Plaintiff/Petitioner: Teresa Drake, et al.

Defendant/Respondent: Mentor Worldwide LLC, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>18CV06194 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice (2) ☒ Without prejudice
   b. (1) ☒ Complaint (2) ☐ Petition
      (3) ☐ Cross-complaint filed by (name): on (date):
      (4) ☐ Cross-complaint filed by (name): on (date):
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other (specify):* As to Defendant Mentor Worldwide LLC only, each party to bear their own costs.

2. (Complete in all cases except family law cases.)
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: 4/15/19

Melissa Agnetti
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

[signature: Melissa Agnetti]
(SIGNATURE)
Attorney or party without attorney for:
☒ Plaintiff/Petitioner ☐ Defendant/Respondent
☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

(SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner ☐ Defendant/Respondent
☐ Cross Complainant

(To be completed by clerk)

4. ☐ Dismissal entered as requested on (date):
5. ☒ Dismissal entered on (date): 4/16/2019 as to only (name): Same as above.
6. ☐ Dismissal not entered as requested for the following reasons (specify):

7. a. ☒ Attorney or party without attorney notified on (date): 4/16/2019
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide a copy to be conformed ☐ means to return conformed copy

Date: 4/16/2019 Clerk, by /s/ Terri Chavez , Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

| Plaintiff/Petitioner: Teresa Drake, et al. | CASE NUMBER: |
|---|---|
| Defendant/Respondent: Mentor Worldwide LLC, et al. | 18CV06194 |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**
If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1.  The court waived court fees and costs in this action for *(name)*:

2.  The person named in item 1 is *(check one below)*:

    a. ☐ not recovering anything of value by this action.

    b. ☐ recovering less than $10,000 in value by this action.

    c. ☐ recovering $10,000 or more in value by this action.  *(If item 2c is checked, item 3 must be completed.)*

3.  ☐ All court fees and court costs that were waived in this action have been paid to the court  *(check one)*:      Yes      No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____      ▶      _____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

STATE OF CALIFORNIA    )
COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California.  I am over eighteen years of age and not a party to the within action; my business address is 5757 West Century Blvd., Suite 680, Los Angeles, California 90045

    On the date set forth below, I served true and correct copies the foregoing document(s) described as:

### REQUEST FOR DISMISSAL

On all interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

    [X ]    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Napoli Shkolnik's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I declare under penalty of perjury, under the laws of the State of California that the above is true and correct.

    Executed this 15th day of April, 2019, at Los Angeles, California.

*Jeanne Jumain*
Jeanne Jumain
NAPOLI SHKOLNIK, PLL

1
PROOF OF SERVICE

## SERVICE LIST

1
Wes Steimle, Esq.
2   Zachary Burnett, Esq.
King & Spalding,
3   500 West 2nd Street
Suite 1800
4   Austin, Texas 78701

5   Attorneys for Mentor Worldwide

6
Coloplast Manufacturing US, LLC
7   C/O CT Corporation (Agent for Service of Process)
818 West 7th Street
8   Suite 930
9   Los Angeles, CA 90017

10
Coloplast Corp.
11   C/O CT Corporation (Agent for Service of Process)
818 West 7th Street
12   Suite 930
13   Los Angeles, CA 90017

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28